HUMPHREYS *et al.*

*v.*

HOGE.

(*Supreme Court of Appeals of Virginia, July 16, 1896.*)

[25 S. E. Rep. 106.]

**Real-Estate Broker—Commissions—Contract with Purchaser for Additional Commissions—Evidence of.**

In an action by a real-estate broker for commissions on a purchase of land, he testified that, in addition to a cash commission which had been paid by defendant, there was an agreement made at another time for payment of additional commissions in case plaintiff procured a purchase for less than a certain price, and defendant testified that no contract for additional commissions was made at the time the original contract was made, but did not state that no such contract was made thereafter; and there was evidence that, after the sale had been completed, defendant stated to a third person that he had paid plaintiff a cash commission, and that plaintiff "will receive something more in the future": *held*, that the evidence sufficiently established a contract for additional commissions.

**Same—Same—Same—Assumption of Contract by Third Person.**

In an action by a real-estate broker for commissions, it appeared that defendant H. had agreed in writing to give plaintiff a certain cash commission, and had thereafter orally agreed to give additional commissions in case plaintiff procured a reduction of the price asked by the owner, and that such reduction was made by procuring from such owner additional property without additional consideration. It also appeared that defendant H. wrote to defendant W., stating the terms of the written contract, and that he had agreed to give plaintiff a cash commission; and defendant W., without making inquiry as to any agreement for additional commissions, replied that he would take "the deal" from the hands of defendant H., and assume the payment of the commission and the price, and defendant W. obtained the additional property: *held*, that he was liable for the additional commissions.

Appeal from circuit court, Craig county ; Henry E. Blair, Judge.

Action by J. Hampton Hoge against A. E. Humphreys and another. Judgment for plaintiff, and defendants appeal. Affirmed.

*Marshall & Read* and *Blair & Blair,* for appellants.

*L. H. Cocke, Scott & Staples,* and *Hoge & Hoge,* for appellee.

RIELY, J., delivered the opinion of the court.

The plaintiff bases his claim to additional compensation for his services in making the purchase of the Mountain Lake tract of land upon an alleged agreement on the part of the defendant Humphreys to give him, in addition to the sum of $10,000, one-half of the difference between $250,000 and any less price at which he might succeed in buying the land. It is conceded that he was authorized by Humphreys to buy the land for him at the price of $250,000, and that, if he succeeded in doing so, he was to receive $10,000 as a commission for his services. It is further conceded that he bought the land at that price, and was paid $10,000 ; and it is not controverted that there was included in the purchase, as an inducement thereto, and for the said consideration, other real and personal property not contemplated at the time that the plaintiff was employed to make the purchase. It is to one-half of the value of this additional property that the plaintiff claims that he is entitled, as further compensation for his services. The amended bill sets forth fully and clearly the claim of the plaintiff, and waives an answer under oath. The defendants answered, and denied the allegations of the bill. The cause was not heard upon the bill and answer only, and the answer, therefore, was not evidence in favor of the defendants. Code Va. § 3281.

It appears from the evidence that the employment by Humphreys of the plaintiff to buy the Mountain Lake land took place while they were traveling together on the cars from Danville to Lynchburg. The plaintiff testified that the agreement authorizing him to make the purchase at $250,000, and to pay him a commission of $10,000, was reduced to writing on the back of an envelope, and signed by Humphreys ; and that after this had been done, and just before they reached Lynchburg, Humphreys said to him that, if he bought the land for less than $250,000, he would give him one-half of the difference. His testimony in support of the agreement for additional compensation is direct and explicit. While Humphreys, in his answer, denies any agreement for compensation beyond the commission of $10,000, yet when he comes to testify, after stating how the contract in writing was brought about, he contents himself with saying : "That was all that was said at the time on the subject." He does not deny that an agreement for additional compensation in case the plaintiff bought the land for less than $250,000 was subsequently made, just before they arrived at Lynchburg, where they parted. The plaintiff did not claim that the agreement for additional compensation occurred at the time the original contract was concluded, but that it took place after that time. Humphreys is no doubt correct that nothing was said as to additional compensation at the time the original contract was entered into. The plaintiff does not pretend that there was. Humphreys' statement may be entirely true, and yet the subsequent agreement, as testified to by the plaintiff, have been made. It is to be noted that, notwithstanding Humphreys did not give his deposition until nearly a year after that of the plaintiff was taken, he does not deny, nor even allude to, the statement of the latter that the promise of increased compensation was a subsequent agreement, although the plaintiff specified the time and place, and detailed the circumstances, under which the last agreement was made. Whether the commission was intentional or an

oversight we cannot know, but the fact of the commission and the inference resulting from it cannot be disregarded. The testimony of Tompkins also tends to corroborate that of the plaintiff. Shortly after the purchase became public, Tompkins met with Humphreys, and, in the course of the conversation that ensued, asked him what compensation the plaintiff received. His reply was, "We have paid him, or are to pay him, $10,000 cash," and supplemented his reply with the remark that he "will receive something more in the future." Humphreys, in his deposition, attempts to explain it by saying that he meant that the plaintiff would probably get more if the investment should turn out to be very profitable. Without pursuing the evidence further, it is sufficient to say that it sustains the claim of the plaintiff for additional compensation.

As to the value of the additional property acquired along with the purchase of the Mountain Lake land, the evidence is not very satisfactory ; but, after duly considering it, our conclusion is that the valuation put upon it by the circuit court is a fair and just estimate from the testimony. It fixed it at $4,500, and gave the plaintiff a decree for $2,250 against Woodman, as well as against Humphreys. It is contended that in no event should the decree have gone against Woodman ; that he had not assumed to pay the plaintiff any commission beyond the sum of $10,000 ; and that there was no privity between them. Bearing upon this question, there are certain facts about which there is no dispute. The plaintiff informed Humphreys, by letter, of the purchase as soon as it was made, who, aware of his inability to pay for the land, at once sought Woodman to get him to assume the purchase. He informed him that the subject of the purchase was the Mountain Lake tract of land ; that the consideration was $250,000 ; and that the plaintiff was to receive $10,000 for making the purchase. Woodman agreed to take "the deal" off his hands, and pay these moneys. But along with the Mountain Lake land was

included · by the owner, as an inducement to the purchase, other property, of the value of $4,500, which reduced the consideration to be paid for the land by that sum. Woodman acquired that much more property than was contemplated by. him at the time he agreed to take Humphreys' place in the purchase, for it does not appear that anything was said about the additional property, and it is not probable that Humphreys knew of it, as he had not then seen the contract of purchase. It was acquired through the efforts of the plaintiff, who is entitled, by virtue of his agreement with Humphreys, to one-half of its value. Woodman learned from Humphreys, when he assumed the purchase, that the plaintiff was entitled to compensation for purchasing the property. He made no inquiry of the plaintiff as to the amount of his commission, but chose to rely on the statement of Humphreys that it was $10,000 ; and so it would have been if the additional property had not been included in the purchase, and of this Humphreys and Woodman were not then aware. Duty, as well as interest, dictated that Woodman should have inquired of the plaintiff the amount he was to receive. He did not do so. He was not misled by the plaintiff, and cannot now complain of any injury resulting from his own default. But he is not injured. He has the Mountain Lake land, which was all that he understood that he was getting. when he assumed to pay therefor the sum of $250,000, and to the plaintiff the commission of $10,000 ; and he has, besides, the other property, subject to the decree in favor of the plaintiff for one-half of the value thereof. It is true that the acreage of the Mountain Lake body of land, in consequence of other patents being upon a part of it, was diminished by 20,000 acres,—from 103,000 to 83,000 acres ; but for this loss he was fully compensated by a deduction by the vendor of $50,000 from the original amount of the purchase money. Woodman has possessed himself of all the beneficial results of the services of the plaintiff in making the

purchase, and cannot justly claim exemption from liability for their payment. He cannot be allowed to enjoy all the fruits of the purchase, and repudiate its burdens. He has elected to appropriate the one, and must therefore bear the other. We are of opinion that the decree appealed from should be affirmed.